IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSE RAFAEL LUNA SANCHEZ,
    *Petitioner*,
  v.

PAMELA BONDI, *et al.*,
    *Respondent*.

1:25-cv-018888-MSN-IDD

## MEMORANDUM OPINION AND ORDER

Petitioner Jose Rafael Luna-Sanchez ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner argues that the Department of Homeland Security's ("DHS") classification of his detention under 28 U.S.C. § 1225(b)(1)(b)(ii), subjecting him to mandatory detention, violates his right to substantive and procedural due process under the Fifth Amendment (Counts One and Two), the Immigration and Nationality Act ("INA") (Count Three), and the Administrative Procedure Act ("APA") (Count Four).

Petitioner is currently detained at the Caroline Detention Facility, an immigration detention facility within this Court's jurisdiction. He has sued Paul Perry, the warden of that facility. He has also sued Pamela Bondi, the Attorney General; Kristi Noem, the DHS Secretary; Todd M. Lyons, ICE's Acting Director; and James A. Mullan, the Assistant Field Office Director of ICE's Washington Field Office (collectively, the "Federal Respondents"). The Federal Respondents have opposed the Petition. ECF 7. For the reasons that follow, the Court concludes that Petitioner is

detained pursuant to 8 U.S.C. § 1226(a), and because Petitioner was already released on bond that was not properly revoked, the Court will grant his petition as to Counts One and Two.[1]

## I. BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States without inspection on June 7, 2014. ECF 1 ¶ 17. On or around June 10, 2014, Customs and Border Patrol officers encountered Petitioner, detained him, and served him with a Form I-860, Notice of Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A).[2] ECF 7–1 ¶ 6. Petitioner, however, expressed a fear of returning to El Salvador, and so an asylum officer conducted a credible fear interview. *Id.* at ¶ 7. The asylum officer determined that Petitioner had a credible fear of persecution, ECF 1 ¶ 17; ECF 1–2 at 1, which, under immigration law at the time, meant that Petitioner became eligible for bond.[3]

After determining that Petitioner had a credible fear, ICE filed a Notice to Appear ("NTA") on July 11, 2024, placing Petitioner in full removal proceedings under 8 U.S.C. § 1229. ECF 8–2. The NTA charged Petitioner as being present in the United States without having been admitted or paroled and identified him as an immigrant who, at the time of application for admission, was

---

[1] Because the Court grants relief on Petitioner's due process claims, it need not address Petitioner's claims under the INA (Count Three) or APA (Count Four).

[2] Many of the facts the Court relies upon are from the declaration of James A. Mullan, Supervisory Detention and Deportation Officer. ECF 7–1. In his declaration, Mr. Mullan attests to "the facts and circumstances regarding Petitioner's immigration proceedings and custody status" based on, among other things, his "review of information contained in Petitioner's files, records and databases maintained by ICE." *Id.* at ¶ 4. Critically, however, Federal Respondents do not attach to their opposition any of the records Mr. Mullan reviewed, and Petitioner asserts that he has been unable to obtain several of the records upon which Mr. Mullan relies. *See* ECF 8 at 11 nn.1–2, 14 n.4, 17 n.5.

[3] As Petitioner explains, in 2005, the Board of Immigration Appeals ("BIA"), held that noncitizens who were transferred from expedited removal proceedings to full removal proceedings after demonstrating a credible fear of persecution could be eligible for release on bond. *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005). In 2019, the BIA overruled its decision in *Matter of X-K*, concluding that noncitizens transferred from expedited removal proceedings to full removal proceedings after demonstrating a credible fear are ineligible for release on bond and must be detained pending removal proceedings, unless they can demonstrate eligibility for release on humanitarian parole. *Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019).

not in possession of a valid entry document.[4] *Id.* Petitioner sought review of DHS's custody determination and, sometime prior to July 22, 2014, an Immigration Judge ("IJ") ordered his release on bond in the amount of $7,500. ECF 8–1.

Following his release, Petitioner moved to Maryland where he lives with his partner and children, one of whom is a U.S. citizen. ECF 1 ¶ 20. Petitioner runs a local construction company. *Id.* at ¶ 21.

On August 21, 2015, Petitioner failed to appear for an initial Master Calendar Hearing before the New York Immigration Court. ECF 7–1 ¶ 9. An IJ determined that Petitioner was removable under the charges in his NTA and ordered Petitioner removed *in absentia*. *Id*. On March 11, 2021, however, Petitioner filed a Motion to Reopen and Rescind the *In Absentia* Order, along with an application for asylum. *Id.* at ¶ 10; ECF 1 ¶ 19. The Immigration Court granted his Motion to Reopen and Rescind the *In Absentia* Order and transferred his proceedings to the Hyattsville Immigration Court. ECF 7–1 ¶¶ 10, 12.

On October 2, 2025, ICE officers "encountered Petitioner in the Washington, D.C. area." *Id.* at ¶ 13. ICE officers "confirmed Petitioner was present in the United States without being admitted or paroled, and took him into civil immigration custody." *Id*. Petitioner was initially transferred to the ICE Washington Field Office in the Commonwealth of Virginia "where he was told that he would be detained without bond pending proceedings before an immigration judge." ECF 1 ¶ 22. He was subsequently transferred to the Caroline Detention Facility, where he has been detained since. *See id.* While Petitioner has not filed a motion for custody redetermination, he

---

[4] A Notice to Appear is a "[c]harging document" that initiates a proceeding before an Immigration Judge." 8 C.F.R. § 1003.13.

3

contends that he is effectively foreclosed from doing so as a result of the Board of Immigration Appeals ("BIA")'s decision in *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).[5]

## II.   ANALYSIS

### A.   Jurisdiction

Federal Respondents first contend that this Court lacks jurisdiction to review Mr. Luna-Sanchez's Petition.

Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." The writ of habeas corpus has traditionally "served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). As this Court has repeatedly observed, habeas is "regularly invoked on behalf of noncitizens." *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025) (quoting *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *3 (E.D. Va. Sept. 19, 2025)).

Federal Respondents nevertheless argue that 8 U.S.C. § 1252(a)(2)(A)(iv) strips this Court of jurisdiction to consider Petitioner's claims. ECF 7 at 8–9. Section 1252(a)(2)(A)(iv) provides that, "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review . . . *procedures and policies* adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title." (emphasis added). Federal Respondents argue that Petitioner is precluded from receiving bond because of the Attorney General's decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019), concluding that individuals

---

[5] Federal Respondents have waived any argument that Petitioner did not exhaust his administrative remedies with respect to his habeas claim.

initially detained under § 1225(b)(1) who establish credible fear are not entitled to release on bond, and that *Matter of M-S-* is a policy or interpretation which § 1252(a)(2)(A)(iv) bars from this court's review. ECF 7 at 8–9.

The Court concludes otherwise. As the Supreme Court has repeatedly instructed, courts must narrowly construe the jurisdiction-stripping language in the INA. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (rejecting a broad interpretation of a similar jurisdiction stripping provision, 8 U.S.C. § 1252(b)(9)); *Reno v. Am.-Aarab Anti-Discrimination Comm.*, 525 U.S. 471, 482–87 (1999) (rejecting a broad interpretation of the jurisdiction-stripping language in 8 U.S.C. § 1252(g)); *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968) (explaining that the INA "must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes"). Here, Petitioner does not challenge the procedures or policies through which DHS implements expedited removal under 8 U.S.C. § 1225(b)(1); rather, he challenges whether he is subject to those policies in the first place and whether his continued detention, after an IJ ordered his release on bond, violates his right to due process.[6] Accordingly, § 1252(a)(2)(A)(iv) has no application to Mr. Luna-Sanchez's Petition.

## B. The Legality of Petitioner's Detention

The central question posed in the Petition is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) or instead subject to discretionary detention and continued release on bond under 8 U.S.C. § 1226(a). Petitioner contends that his detention is governed by § 1226(a) and that, because Federal Respondents did not properly revoke his prior release on bond, his current detention is unlawful. ECF 8 at 12–21. Federal Respondents contend

---

[6] This case is distinct from *Romero v. Bondi*, 1:25-cv-00993 (RDA/WEF), 2025 WL 2490659, at *3 (E.D. Va. July 2, 2025). In *Romero*, a court in this division determined that a Petitioner was detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), and, therefore, the court lacked jurisdiction under 8 U.S.C. § 1252(a)(2)(A)(iv) to grant his release on bond. By contrast, here, the Court determines that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). *See infra*.

that because Petitioner was initially detained under § 1225(b)(1)(B)(ii) in 2014, he continues to be subject to that provision's mandatory detention requirement. ECF 7 at 10–12. They further argue that Petitioner is subject to mandatory detention under § 1225(b)(1)(B)(ii) because he is an "applicant for admission." *Id.* at 12–13.

The Court has already explained the intricacies of §§ 1225(b) and 1226 in *Hasan.* 2025 WL 2682255, at *5–6. In short, § 1225(a) states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Hasan*, 2025 WL 2682255, at *5.

Section 1225(b)(1) covers expedited removal of certain noncitizens—including those who are determined to be inadmissible due to a lack of valid documentation—and requires mandatory detention during removal proceedings. *See Hasan*, 2025 WL 2682255, at *5. The statute provides that applicants for admission who are covered by § 1225(b)(1) are removed "without further hearing or review" under an expedited process unless the person "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that person is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). If an immigration officer determines that the individual has a credible fear of persecution, § 1225(b)(1)(B)(ii) provides that "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Unlike § 1225(b)(1)(B)(ii), noncitizens who fall under § 1226(a) are not subject to mandatory detention.

Pending a removal decision, the Attorney General may continue to detain an arrested noncitizen, release them on bond, or release them on conditional parole, unless they fall within certain exceptions involving criminal offenses and terrorist activities. *See* 8 U.S.C. § 1226(a) (1)-(2), (c).

Federal Respondents argue that because Petitioner was initially placed in expedited removal proceedings under § 1225(b)(1), he continues to be subject to that provision's mandatory detention requirement until his asylum application is fully adjudicated. ECF 7 at 10–12. But that argument belies the record in this case. After Petitioner established a credible fear of persecution, DHS placed him in full removal proceedings under 8 U.S.C. § 1229a, *see* ECF 8–2, and then released him on bond pursuant to § 1226(a), *see* ECF 8–1; *see also Matter of X-K-*, 23 I. & N. Dec. 731, 734–36 (BIA 2005) (concluding that IJs may exercise their "general custody authority" under § 1226(a) and release individuals on bond who are initially screened for expedited removal but subsequently establish a credible fear of persecution); *overruled by Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019). Petitioner's prior release on bond carries legal significance. As this Court explained in *Quispe-Ardiles*, DHS's decision to release an individual on bond, as opposed to humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), constitutes strong evidence that DHS intended to detain the individual under § 1226(a) and not under § 1225(b). 2025 WL 2783800, at *6; *see also Loja v. FCI Berlin, Warden*, 1:25-cv-386-JL-TSM, 2025 WL 3079160, at *2 (D. N.H. Nov. 4, 2025) (observing that, when the government elects to release a person on bond under § 1226(a), rather than humanitarian parole under § 1182(d)(5)(A), the government cannot later "turn back the clock, and neither can the Court" (quoting *De Andrade v. Moniz*, No. 25-cv-12455, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025))). DHS's release of Petitioner on bond thus supports the conclusion that he is currently detained under § 1226(a).[7]

---

[7] Federal Respondents rely on *Romero* to argue that the apparently erroneous release of a petitioner on bond cannot change his legal status. ECF 7 at 12 (citing *Romero*, 2025 WL 2490659, at *2). But here, there is no indication that Petitioner's prior release on bond *was* erroneous.

7

Undeterred, Federal Respondents contend that the "fact that Petitioner was released on bond . . . has no bearing [on] Petitioner's *current* detention" because Petitioner remains an applicant for admission" and an "arriving alien," and therefore meets the statutory requirements to be detained under 8 U.S.C. § 1225(b)(1)(B)(ii). ECF 7 at 12–13.

Federal Respondents' argument is unpersuasive. As this Court and others[8] have addressed in the context of 8 U.S.C. § 1225(b)(2), Federal Respondents' argument reflects DHS's novel interpretation of decades-old immigration detention statutes which is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. *See, e.g.*, *Quispe-Ardiles*, 2025 WL 2783800, at *6–7; *Hasan*, 2025 WL 2682255, at *8–9; *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have [an] extremely limited (if any) application." *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) (footnote omitted). This Court has previously addressed several of these points in *Quispe-Ardiles*, 2025 WL 2783800. It adopts and incorporates that reasoning into this Order and concludes that Petitioner is detained pursuant to § 1226(a).

Having concluded that Petitioner is detained pursuant to § 1226(a), the Court must next consider whether his continued detention without bond—after having been previously granted release on bond—is lawful. Under § 1226(b), DHS "may revoke a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien." U.S.C. § 1226(b).

---

[8] *See Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 & n.9 (E.D. Va. Sept. 29, 2025) (collecting cases).

But "[t]he BIA has held that, 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)); *see also Chaudhari v. Crawford*, 1:25-cv-01772 (LMB/IDD), slip op. at 8 (E.D. Va. Oct. 23, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *9, 2025 WL 2370988 (D. Mass. Aug. 14, 2025). The record here reflects no change in circumstances that could justify the revocation of Petitioner's bond. Indeed, the record reflects that ICE detained Petitioner simply because officers "encountered" him and "confirmed Petitioner was present in the United States without being admitted or paroled, and took him into civil immigration custody." ECF 7–1 ¶ 13.

Such arbitrary detention violates Petitioner's right to substantive due process. As this Court explained in *Quispe-Ardiles*, governmental detention violates substantive due process "unless the detention is ordered in a criminal proceeding with adequate procedural protections or, in certain special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." 2025 WL 2783800, at *8 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Federal Respondents have not provided any special justification that might warrant Petitioner's continued detention without bond. And "[a]ny interest that the federal respondents may have in securing [Petitioner's] presence at immigration proceedings has been accounted for by the IJ's imposition of bond." *Id.* (quoting *Hasan*, 2025 WL 2682255, at *10).

Petitioner's continued detention likewise violates his right to procedural due process. Petitioner has invoked "the most elemental of liberty interests: "[t]he interest in being free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). There is a substantial likelihood

9

that, by allowing DHS to arbitrarily revoke Petitioner's bond and detain him without any individualized findings, Petitioner will be erroneously deprived of liberty. *See Quispe-Ardiles*, 2025 WL 2783800, at *9. DHS already has additional procedural safeguards that it could have employed to avoid an erroneous deprivation of liberty, namely the procedures for revoking bond outlined in § 1226(b). And finally, as in *Quispe-Ardiles*, the Court discerns no significant governmental interest in continuing to hold Petitioner without bond. *See* 2025 WL 2783800, at *10.

Because Petitioner's continued detention violates his right to due process, he is entitled to immediate release. *See, e.g.*, *Chaudhari*, 1:25-cv-01772 (LMB/IDD), slip op. at 7–8 (determining that petitioner's detention is unlawful and requiring release where DHS revoked petitioner's bond without justification); *dos Santos v. Noem*, 2025 WL 2370988, at *9 (same).

### III.  CONCLUSION

For the reasons stated above, the Petition will be GRANTED as to Counts One and Two and it is hereby

ORDERED that Petitioner be released from custody on the bond that was set in July of 2014, no later than 4:00 pm on Monday, November 17, 2025, with all his personal property; and it is further

ORDERED that Petitioner's counsel immediately provide the Court and Federal Respondents with a fixed address for Petitioner's release so that DHS may notify him of future bond proceedings[9]; and it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless he has committed a new violation of any federal,

---

[9] Petitioner should redact personal identifiers or file those documents under seal.

state, or local law; has failed to attend any properly noticed immigration or court hearing; or has received a final order of removal; and it is further

ORDERED that Federal Respondents file a notice with the Court confirming Petitioner's release.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of the Order and accompanying Memorandum Opinion to counsel of record, and close this civil action.

/s/<br>
Michael S. Nachmanoff<br>
United States District Judge

November 14, 2025
Alexandria, Virginia